# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DORIAN ARMON BAKER,

                    Petitioner,

v.                                                    CASE NO. 06-12860
                                                      HONORABLE DENISE PAGE HOOD
KENNETH McKEE,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner Dorian Armon Baker has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for first-degree murder and assault with intent to commit great bodily harm less than murder. The Court has found no merit in Petitioner's claims. Therefore, the habeas petition will be denied.

## I.  Background

Petitioner was charged in Wayne County, Michigan with two counts of first-degree murder,[1] assault with intent to commit great bodily harm less than murder, and home invasion in the first degree. The charges arose from an incident on December 2, 2002, when Petitioner forced his way into I-sha Bennett's house and stabbed his estranged wife (Lynn Baker), who was staying with Ms. Bennett. When the police arrived at Ms. Bennett's home, they found Petitioner straddling his wife on the floor with a knife pointed at her chest. Petitioner resisted the officers' efforts to take the knife from him, and, in the process of wrestling with the officers, he slashed

---

[1] There was one murder victim, but the prosecutor proceeded on two different theories: premeditated murder and felony murder.

one of the officer's fingers.  The officer lost the tip of his finger, and  Petitioner's wife died from a single stab wound to her chest.

Following a bench trial, Petitioner was found guilty of second-degree murder, MICH. COMP. LAWS § 750.317, felony murder, MICH. COMP. LAWS § 750.316(1)(b), assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and first-degree home invasion, MICH. COMP. LAWS § 750.110a(2).  The trial court subsequently vacated the second-degree murder conviction on double jeopardy grounds and sentenced Petitioner to life imprisonment for the felony murder, six to ten years in prison for the assault on the police officer, and ten to twenty years in prison for the home invasion.  The Michigan Court of Appeals vacated Petitioner's conviction and sentence for home invasion, but affirmed Petitioner's convictions for felony murder and assault with intent to commit great bodily harm less than murder.  *See People v. Baker*, No. 248638, 2004 Mich. App. Lexis 3161, 2004 WL 2624721 (Mich. Ct. App. Nov. 18, 2004).  The Michigan Supreme Court denied leave to appeal on June 28, 2005, because it was not persuaded to review the issues.  *See People v. Baker*, 472 Mich. 941; 698 N.W.2d 392 (2005) (table).

Petitioner filed his habeas corpus petition on June 28, 2006.  His claims are:

I.      Mr. Baker was denied a fair trial when the state prosecutor introduced evidence that Mr. Baker allegedly stabbed his wife one week prior to the commission of the crimes in this case.

II.     Mr. Baker's conviction for felony murder should be reversed because the evidence was insufficient as a matter of law to sustain a verdict of guilty beyond a reasonable doubt.

III.    The non-parolable mandatory life sentence for first-degree murder violates the Michigan Constitution because it is indeterminate and because it constitutes cruel and unusual punishment.

IV.     The state court committed reversible error while sitting as the trier of fact during the bench trial, violating an absolute rule of law

when it consulted and used the preliminary examination transcript in making its determination of Mr. Baker's guilt, thereby utilizing evidence not introduced at the trial and creating a presumption of bias amounting to a structural defect requiring automatic reversal.

V.      The trial court's findings of fact at Mr. Baker's bench trial were clearly erroneous, defied logic, were inconsistent, and based upon thoroughly discredited testimony, demonstrating a biased interpretation of the evidence and denying Mr. Baker a fair trial where his guilt was established beyond a reasonable doubt.

VI.     Mr. Baker's Fifth, Sixth, and Fourteenth Amendment rights were violated when Mr. Baker was deliberately denied all the relevant discovery materials with which to make informed personal choices regarding his rights, and to assist his attorney during the prosecution, thereby making the waiver of his constitutional rights unknowing, involuntary, and lacking in understanding.

VII.    Mr. Baker's Fifth Amendment rights were violated when Officer Zwicker inaccurately wrote out his statement, making no effort to tape record it, while Mr. Baker could not see because of the chemical burning of his eyes and therefore could not verify the statement was correctly transcribed.

VIII.   Mr. Baker was denied his right to effective assistance of counsel when Lawyer Slameka committed misconduct, failed to investigate and prepare for trial, allowed Mr. Baker to be seriously diminished throughout the proceedings, and failed to present an adequate defense to the prosecution's case.

IX.     Mr. Baker's first and Fourteenth Amendment rights were unconstitutionally chilled by the oppressive, discriminatory practices of Michigan's court system, and the arrogant and unadulterated snobbery of Judge Sullivan.

Respondent argues in an answer to the habeas petition that Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or lack merit. The Court has found it easier and more efficient to address the substantive merits of Petitioner's claims than to analyze whether they are procedurally defaulted. Accordingly, the Court will excuse the alleged procedural defaults. A federal habeas court need not address a procedurally defaulted issue before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir.

3

2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor

4

the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct.

362, 154 L. Ed. 2d 263 (2002) (*per curiam* opinion) (emphasis in original).  Furthermore, "§

2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands

that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455,

125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (quotation marks and citations omitted).

## III.  Discussion

### A.  Other Acts Evidence

Petitioner alleges that he was deprived of a fair trial when I-sha Bennett implied that he

stabbed his wife on a prior occasion.  Petitioner asserts that there was no evidence to support Ms.

Bennet's allegation and that her testimony was an impermissible attack on his character.  The

Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner failed to

object on the same ground at trial.

This Court finds no merit in Petitioner's claim because

> [t]here is no clearly established Supreme Court precedent which holds that a state
> violates due process by permitting propensity evidence in the form of other bad
> acts evidence . . . .  While the Supreme Court has addressed whether prior acts
> testimony is permissible under the Federal Rules of Evidence, *see Old Chief v.
> United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681
> (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514,

519-23 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).  Because there is no

Supreme Court decision holding that the admission of "other acts" evidence violates the

Constitution, the state court's conclusion that the evidence was admissible cannot be deemed

"contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d).

Even if *Bugh v. Mitchell* were not dispositive of the issue, court errors on evidentiary law

"do not rise to the level of federal constitutional claims warranting relief in a habeas action

5

unless the error rendered the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). The Michigan Court of Appeals determined that the disputed remark was admissible under Michigan Rule of Evidence 404(b)(1) to show that Petitioner intended to stab his wife and that the stabbing was not an accident as he claimed.

Furthermore, the trial court stated that it would not accept the disputed remark for the truth of the matter. (Tr. Mar. 10, 2003, at 19.) Although the trial court later mentioned the "prior acts" testimony at the close of the case, it was merely summarizing I-sha Bennett's testimony at the time. (Tr. Mar. 11, 2002, at 32.) There is no indication in the record that the trial court relied on Ms. Bennett's testimony about the prior incident as proof that Petitioner committed the crimes for which he was charged. As such, testimony implying that Petitioner stabbed his wife a week before the charged crimes did not render the proceedings fundamentally unfair as to deprive Petitioner of due process under the Fourteenth Amendment.

**B.  Sufficiency of the Evidence**

Petitioner alleges that his felony murder conviction should be reversed because there was insufficient evidence to support the conviction. Petitioner maintains that he did not possess the malice necessary to be convicted of felony murder and that the homicide was a tragic accident, which occurred while he was trying to keep his family together. The Michigan Court of Appeals concluded on review of this claim that there was sufficient evidence for the trial court to have determined that Petitioner intended to kill his wife.

**1.  Supreme Court Precedent**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 75 L. Ed. 2d 368 (1970).  The

critical question on review of the sufficiency of the evidence to support a criminal conviction is

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in

original).

The Jackson "standard must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law." *Id*. at 324 n.16.  The elements of felony murder

are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily
> harm, or to create a very high risk of death or great bodily harm with knowledge
> that death or great bodily harm was the probable result [i.e., malice], (3) while
> committing, attempting to commit, or assisting in the commission of any of the
> felonies specifically enumerated in [the statute . . . ].

*People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999) (quoting *People v. Turner*,

213 Mich. App. 558, 566; 540 N.W.2d 728, 732 (1995), *overruled in part on other grounds by*

*People v. Mass*, 464 Mich. 615, 627-28; 628 N.W.2d 540, 548 (2001)).  First-degree home

invasion is one of the enumerated felonies in the felony-murder statute, *see* MICH. COMP. LAWS §

750.316(1)(b), and malice may be inferred from the facts and circumstances of the crime, *People*

*v. Spearman*, 195 Mich. App. 434, 438; 491 N.W.2d 606, 609 (1992), *overruled on other*

*grounds by People v. Veling*, 443 Mich. 23, 42-43; 504 N.W.2d 456, 465 (1993), including the

use of a deadly weapon, *Turner*, 213 Mich. App. at 567; 540 N.W.2d at 733.

### 2.  Application

The parties stipulated that Lynn Baker died as a result of a single stab wound to the chest,

and there was substantial evidence that the stabbing occurred during the commission of a home

invasion.  I-sha Bennett testified that Petitioner unsuccessfully tried to pry open her front door and then broke her front window and entered the house without her permission.

The primary issue at trial was whether the stabbing was accidental or intentional. Although Petitioner claimed in his statement to the police that he intended only to scare his wife when he placed the tip of his knife on her chest, he also admitted to the police that he stabbed his wife one time with a fillet knife and may have stabbed her a second time during the struggle.

Petitioner maintained at trial that he stabbed his wife accidentally while the police were trying to extricate him from his wife.  However, Police Officer Derrick Knox testified that Petitioner's arms went into the air as he grabbed Petitioner (Tr. Mar. 10, 2003, at 83-84), and the medical examiner's report indicated that the knife penetrated Mrs. Baker's lung.  The severity of the injury suggests that the stabbing was done intentionally with a significant amount of force before the police arrived.  Mrs. Baker had defensive wounds on her hands, and after she got out from under Petitioner, she informed I-sha Bennett that Petitioner had stabbed her.

There was additional evidence that Petitioner brought a crowbar, the fillet knife, Molotov cocktails, and an igniter with him to the house.  It took three police officers to remove the knife from Petitioner's hand and to restrain him.

Furthermore, according to Police Officer Marc Thompson, Petitioner informed his children, who were staying at Ms. Bennett's home, that he intended to kill everyone in the house. Petitioner claims that Officer Thompson was not a credible witness and that his testimony about Petitioner intending to kill everyone in the house was not corroborated by any other witness. While it is true that Officer Thompson's testimony on this issue was not corroborated, "[u]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  "It is the province

of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)).   "[A]ttacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence." *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984) (emphasis in original).

A rational trier of fact could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner killed his wife during a home invasion and that he acted with the intent to kill, the intent to do great bodily harm, or, at a minium, the intent to create a very high risk of death or great bodily harm, knowing that death or great bodily harm was the probable result.  Therefore, the state appellate court's conclusion that the evidence was sufficient to support Petitioner's felony murder conviction did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

### C.  The Sentence

Petitioner's third claim alleges that his mandatory life sentence for felony murder violates the Michigan Constitution because it is an indeterminate sentence and constitutes cruel or unusual punishment.  Petitioner maintains that the killing was accidental and that his life sentence was disproportionate because he served in the United States Navy, was well educated and employed, took care of his family before the crimes in question, and had no prior criminal history.  The Michigan Court of Appeals stated on review of this claim that Petitioner failed to preserve his claim for appellate review and that the State's appellate courts had already addressed and rejected the issue about indeterminate sentences.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990).  Therefore, the Court need not decide

whether Petitioner's sentence violates the Michigan Constitution. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

Although the Eighth Amendment to the United States Constitution proscribes cruel and unusual punishment, a plurality of the Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

The Supreme Court determined in *Harmelin* that life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual punishment even though Harmelin had no prior felony convictions. If Harmelin's sentence for a nonviolent offense was not grossly disproportionate to the offense or the offender, Petitioner's sentence of life imprisonment for killing his wife cannot be considered grossly disproportionate. His claim lacks merit.

### D.  Use of the Preliminary Examination Transcript

Petitioner alleges next that trial court violated an absolute rule of law and created a presumption of bias when it used the transcript of the preliminary examination to determine his guilt or innocence. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not raise the issue in the trial court. The court of appeals also stated that,

although the trial court may have erred, the error did not constitute "plain error" because the evidence against Petitioner was overwhelming and it was unlikely that the outcome of the proceeding would have been different had the trial court not referred to the transcript.

Due process requires the trier of fact to be "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). In a non-jury trial, however,

> the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice. The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the Court considered only properly admitted and relevant evidence in rendering its decision.

*United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972). "The admission of such evidence is deemed harmless if there is relevant and competent evidence to establish defendant's guilt in absence of the objectionable proof." *Id.*

I-sha Bennett testified at Petitioner's preliminary examination that, as Petitioner was trying to break into her home, she discovered that her telephone lines had been torn out and that her alarm system, which was tied to her telephone lines, was disabled as well. (Tr. Dec. 18, 2002, at 14-16.) Although Ms. Bennett did not repeat this testimony at trial, the trial court stated in its summary of the facts that Ms. Bennett "knew her phone lines were dead because they had been cut earlier; and, of course, her alarm system was run by the phone lines, so they couldn't do that." (Tr. Mar. 11, 2003, at 34.)

The trial court's subsequent conclusions of law do not appear to be based on the fact that someone cut Ms. Bennett's telephone lines. Moreover, the admissible evidence against Petitioner was substantial. *See infra* section III.B. Therefore, even if the trial court relied on testimony from the preliminary examination, the inadmissible evidence could not have had a

11

"substantial and injurious effect or influence" on the trial court's determination of Petitioner's guilt or innocence. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If error occurred, it was harmless error.

### E.  The Trial Court's Findings

Petitioner contends that the trial court's findings of fact were clearly erroneous, illogical, inconsistent, and based on thoroughly discredited testimony. He states that the trial court demonstrated a biased interpretation of the evidence and denied him a fair trial. The Michigan Court of Appeals disagreed and concluded that the trial court's factual findings were not clearly erroneous.

Federal courts generally may not reexamine a trial court's findings of fact, *Barclay v. Florida*, 463 U.S. 939, 968, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983) (Stevens, J., concurring in the judgment), peer over a state court's shoulder and second-guess its interpretation of facts, *Godfrey v. Georgia*, 446 U.S. 420, 450, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980), or scrutinize the factfinder's reasoning process, *Jackson*, 443 U.S. at 319 n.13. "[T]he findings of fact made by a state court are presumed to be correct and can be contravened only if the habeas petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous." *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)); *see also Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) ("state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence").

### 1.  The Officers' Testimony

Petitioner claims that Officer Marc Thompson testified falsely when he stated that Mrs. Baker was bleeding before Petitioner began fighting with the police. Petitioner asserts that Officer Thompson could not have seen blood stains on Mrs. Baker's white tee shirt, because she was wearing a blue sweatshirt over her tee shirt, and the sweatshirt was not removed until she walked away from the affray and went downstairs.

"A trial court's credibility determinations are entitled to considerable deference." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). To the extent that the trial court relied on Officer Thompson's testimony, the court was justified in doing so because Officer Thompson's testimony was plausible and did not contradict the other officers' testimony.[2] Thus, the trial court's alleged reliance on Officer Thompson's testimony about Mrs. Baker's blood-stained shirt was not illogical.

### 2. Intentional Versus Accidental Stabbing

Petitioner faults the trial court for believing that he intentionally stabbed his wife. However, Petitioner's claim that he accidentally stabbed his wife was not consistent with evidence that the knife penetrated Mrs. Baker's lung. Nor was an accidental stabbing consistent with Officer Knox' testimony that Petitioner did not stab his wife during the struggle with police officers. As previously explained, Knox testified that Petitioner's arms went up into the air when he placed his arm under Petitioner's arm in an effort to push Petitioner off his wife.

Additionally, Petitioner admitted to the interrogating police officer that he stabbed his wife. He informed the same officer that he had suspected his wife was seeing another man and

---

[2]  The other officers at the scene did not notice any blood on Mrs. Baker, but they claimed that they were focused on Petitioner's knife or simply were not paying any attention to whether Mrs. Baker was injured or had blood stains on her shirt.

that he was "furious" when I-sha Bennett hung up the telephone on him after telling him that his wife was not in his world anymore.

The trial court's conclusion that the stabbing was intentional and not accidental was plausible in light of the record. Therefore, the trial court's findings are entitled to deference. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

### 3. Trial Court as Expert Witness

Petitioner claims that the trial court became an expert witness against him when the court stated that it defied common sense and logic to think that the knife could have penetrated Mrs. Baker's tissue, muscle, rib, and lung as the police lifted Petitioner off her. (Tr. Mar. 11, 2003, at 48.) This Court agrees with the trial court that it must have taken a substantial amount of force to cause the knife to penetrate Mrs. Baker's lung, and that kind of force was inconsistent with accidentally stabbing someone. The trial court's factual finding on this issue was logical.

In conclusion, the trial court's findings of fact are supported by the record, and Petitioner has not shown by clear and convincing evidence that the findings were clearly erroneous. Therefore, Petitioner has no right to relief on the basis of his challenge to the trial court's findings of fact.

### F. Discovery

Petitioner alleges that he was denied relevant discovery materials, which he needed to assist his attorney and to make informed choices about his constitutional rights. Specifically, Petitioner contends that the lack of discovery materials prevented him from voluntarily and

intelligently waiving his constitutional rights to a jury trial, to testify in his own defense, and to produce or confront witnesses.  Petitioner further alleges that his right to confront Officer Thompson was violated because he was not provided with Officer Thompson's police report.

The Michigan Court of Appeals determined that Petitioner waived his right to appellate review of his claims regarding the right to a jury trial and the right to testify because Petitioner did not raise the issues in the trial court and did not disagree with his attorney when the attorney stated that Petitioner was waiving those rights.  The court of appeals stated that defense counsel's decision to waive certain witnesses was within defense counsel's authority and was a matter of trial strategy.  As for Officer Thompson's police report, the court of appeals stated that Petitioner's right of confrontation was not violated by the failure to obtain a copy of the report because the report was not admitted in evidence and there was no indication in the record that defense counsel asked to see the report or would have been denied the report on request.

"A criminal defendant has no independent right to his own copy of discoverable documents in a state court criminal proceeding when represented by counsel and when these documents have been provided to defense counsel." *Williams v. Dark*, 844 F. Supp. 210, 213-14 (E.D. Pa. 1993).  Petitioner's attorney had discovery materials (Tr. Mar. 27, 2003, at 9), and Petitioner possessed his own copy of many of the pertinent documents, including the transcript of the preliminary examination, a pretrial statement, and the autopsy report.  (*Id.* at 4-10.) Petitioner apparently did not have the witnesses' statements.  (*Id.* at 8).  However, for the following reasons, the Court does not believe that the lack of a personal copy of the witnesses' statements or any other discovery material resulted in an involuntary and unknowing waiver of Petitioner's constitutional rights.

### 1. Waiver of a Jury Trial

15

Petitioner alleges that his waiver of the constitutional right to a jury trial was not voluntary and intelligent.  The dispositive inquiry is whether Petitioner "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Jells v. Mitchell*, 538 F.3d 478, 510 (6th Cir. 2008) (quoting *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004) (quoting *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990))).

Before Petitioner's trial commenced, defense counsel explained to the trial court that he and Petitioner had discussed how the case should be tried.  Counsel stated that Petitioner knew he had an absolute right to trial by jury and that he could waive the right and have the judge try the case.  According to defense counsel, he and Petitioner collectively decided to waive the right to a jury trial.

Petitioner was thirty-three years old at the time, and he had attended community college. When the trial court questioned him about his decision to waive a trial by jury, Petitioner assured the court that he understood he had a constitutional right to be tried by twelve residents of the community and that he could give up the right and be tried by just the court.  He stated that he was freely and voluntarily waiving his right to a jury trial and that no one had promised him anything or threatened him to induce him to waive his right to a jury trial.  (Tr. Mar. 10, 2003, at 4-9.)  In light of the record, the Court finds that Petitioner's waiver of his right to a jury trial was voluntary and knowing.

### 2. Waiver of the Right to Testify

Petitioner claims that his waiver of the right to testify also was involuntary and unintelligent.  Defendants in criminal cases have a constitutional right to testify in their own behalf, *Rock v. Arkansas*, 483 U.S. 44, 51-52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987), and any

relinquishment of the right must be knowing and intentional.  *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).  However,

> when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.  *Joelson*, 7 F.3d at 177.  This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."  *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (footnote omitted).

Petitioner waived his right to testify after stating on the record that he had discussed the matter with his attorney and that he chose to remain silent even though he understood that he could testify.  (Tr. Mar. 11, 2003, at 4.)  Petitioner's waiver of the right to testify "is presumed from [his] failure to testify or notify the trial court of the desire to do so."  *Webber*, 208 F.3d at 551 (citing *Joelson*, 7 F.3d at 177).  If he had wanted to testify, he could have "reject[ed] his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer."  *Joelson*, 7 F.3d at 177.

### 3.  Waiver of the Right to Call and Confront Witnesses

Petitioner asserts that he did not voluntarily and knowingly waive his right to confront important state witnesses and that he was denied access to Officer Marc Thompson's police report.  A defendant in a criminal case has a constitutional right to confront the witnesses against him.  *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006).  However, defense counsel determined that the waived witnesses would not contribute much to the case, given Petitioner's admissions to the police, as well as, testimony that the court had already heard.  Petitioner did not express any disagreement with his attorney's decision to waive witnesses, and because he has not shown that

any of the waived witnesses would have helped his case, the alleged constitutional error was harmless.

 As for Officer Thompson's police report, Thompson merely used the report to refresh his memory when the prosecutor asked him what time he went to I-sha Bennett's house on the night of the murder.  (Tr. Mar. 10, 2003, at 95.)  Petitioner did not ask to see the report, and the report was not admitted in evidence.  Furthermore, defense counsel was given an adequate opportunity to cross-examine Thompson.  Petitioner's right of confrontation was not violated by the lack of a copy of Officer Thompson's report.

### G.  Petitioner's Statement

Petitioner alleges that his Fifth Amendment rights were violated when Police Officer Charles Zwicker inaccurately wrote down his responses to Zwicker's questions during the custodial interrogation.  Petitioner contends that Officer Zwicker made no effort to tape record the statement and that he was unable to verify the accuracy of Zwicker's handwritten account of his statement because his eyes were burning with mace, which the police sprayed on him earlier in the day.  Petitioner contends that Zwicker's account of what he said to Zwicker contains minor discrepancies, which are ambiguous, and that the prosecution and trial court used his statement to support their conclusions.  Although the Michigan Court of Appeals correctly noted that defense counsel waived the right to challenge the admission and use of Petitioner's statement to the police, Petitioner maintains that he had a right to challenge the admission of a false confession.

The record indicates that the home invasion and stabbing occurred about 5:00 a.m. on December 2, 2002.  Petitioner was interrogated at 1:30 p.m. on the same day after being advised of his constitutional rights and waiving them.  Petitioner claimed that he had not been deprived

of anything, promised anything, or threatened in any way.  At the conclusion of his statement, he

and Officer Zwicker reviewed the statement and made one correction to it.  *Id.*

"Neither federal nor Michigan law requires suppression [of a defendant's custodial

statement] solely on the basis that a police interrogation was not electronically recorded."

*Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir. 2007).  Furthermore, Petitioner has not

specified any inaccuracies in Officer Zwicker's handwritten account of Petitioner's statement to

Zwicker.  Nothing in the record indicates that Petitioner's statement was unreliable or coerced.

The Court therefore concludes that Petitioner's Fifth Amendment rights were not violated by

Officer Zwicker's failure to tape record Petitioner's statement to him or by Zwicker's reliance on

his own handwritten notes.

### H.  Trial Counsel

Petitioner alleges that his trial attorney failed to investigate and prepare for trial, allowed

Petitioner to be seriously diminished throughout the proceedings, and failed to present an

adequate defense to the prosecution's case.  Petitioner also claims that his attorney did not share

information with him, nor provide him with basic information about the charges.  He contends

that defense counsel waived witnesses and allowed the State to produce Officer Marc Thompson

as a surprise witness.  The Michigan Court of Appeals adjudicated this claim on the merits and

concluded that Petitioner's ineffectiveness claim was "completely devoid of merit."

### 1.  Clearly Established Federal Law

To prevail on his claim, Petitioner must demonstrate that his attorney's performance was

deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*,

466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The deficient performance prong

of this test requires showing that counsel's representation "fell below an objective standard of

reasonableness." *Id.* at 688.  The prejudice prong requires showing that the result of the proceeding would have been different "but for counsel's unprofessional errors." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Unless a defendant makes both showings [deficient performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

### 2.  Application

Petitioner's defense at trial was that the stabbing occurred accidentally when the police pulled or pushed him off his wife.  Although he did not testify or present any witnesses, he maintained through counsel that he did not intend to kill his wife.  Petitioner has not alleged what additional or alternative defense his attorney could have asserted.  Although he contends that defense counsel should have investigated the horrible effects that Petitioner's marital problems had on his health, he alleges elsewhere that he was gainfully employed and taking good care of his wife and children before the incident on December 2, 2002.

It is true that defense counsel waived production of a number of witnesses and stipulated to the admission of some evidence.  For example, counsel stipulated to the admission of the knife in question and pictures of the interior of I-sha Bennett's house.  This stipulation was the result of Petitioner's admission that he brought the knife to the house.  Counsel waived the evidence technician because the technician would not have been able to contribute additional information about the source of the knife.  (Tr. Mar. 10, 2003, at 147-48.)

Counsel waived production of Petitioner's children and ten additional police officers as witnesses because they would not have added much to the case.  Petitioner personally informed the trial court that he understood he could have those witnesses produced, but that he did not

want any of them to testify.  (*Id.* at 149-51.)

Counsel stipulated that Petitioner's statement to the police was voluntary and admissible, but he said that he and Petitioner had discussed the matter on three separate occasions.  When questioned by the trial court, Petitioner stated that he understood what his attorney was doing, and he agreed to the admission of his statement in evidence without having the prosecutor attempt to prove that he had waived his constitutional rights.  (*Id.* at 135-37.)

Counsel stipulated to the medical examiner's report, which stated that Mrs. Baker died from a single stab wound to the chest, that the manner of death was homicide, that certain wounds on her hands indicated a struggle, and that no other injuries or disease contributed to her death.  (*Id.* at 10-12.)  Counsel also waived the complainants' medical records.  However, he stated that he was aware of their injuries and did not think that the records would assist the trial court any more than the actual testimony, which they had already heard.  (Tr. Mar. 11, 2003, 3-4.)

Defense counsel's stipulations and waivers were reasonable trial tactics, given Petitioner's admissions to the police and the strength of the evidence against Petitioner.  It is unlikely that the waived witnesses would have helped Petitioner if they had testified, and the evidence that was admitted through stipulations was either admissible or harmless to Petitioner's defense.  Defense counsel's trial strategy, no doubt, was to simplify the case and focus on Petitioner's defense that he did not intend to kill his wife.  Counsel's waivers and stipulations did not detract from that defense.

Petitioner alleges that defense counsel permitted the State to produce Officer Marc Thompson as a surprise witness and then failed to discredit Officer Thompson's testimony that Petitioner had said he intended to kill everyone in the house.  Officer Thompson, however, was

not a surprise witness.  He was one of the two police officers who saw Petitioner straddling his

wife and pointing a knife at her chest.  Although he was the only witness to testify that

Petitioner's children had said that Petitioner intended to kill everyone in the house, one possible

explanation for this is that Thompson was the only witness to talk to the children.  If defense

counsel had called Petitioner's children as witnesses, the children might have confirmed that

Petitioner made the incriminating remark.  And if defense counsel had asked prosecution

witnesses about the remark, at best, the witnesses would have said that they did not hear the

remark.

The Court concludes for all the reasons given above that defense counsel's performance

was not deficient.  Even if defense counsel's performance was deficient, the evidence against

Petitioner was so overwhelming that the outcome of the trial in all probability would not have

been different but for the alleged unprofessional errors.  Petitioner's ineffectiveness claim has no

merit.

### I.  The Trial Judge

Petitioner's ninth and final claim alleges that Michigan's court system is oppressive and

discriminatory and that the trial judge was arrogant and snobbish.  In support of this claim,

Petitioner alleges that he was forced to sit with his back to the trial judge and the judge

admonished him for trying to defend himself.  The Michigan Court of Appeals determined that

this claim lacked merit and that Petitioner waived appellate review of the claim by not raising it

in the trial court.

"One touchstone of a fair trial is an impartial trier of fact . . . ."  *McDonough Power*

*Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984).

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile

to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).  To prevail on his claim, Petitioner must show that the trial court displayed a "clear inability to render fair judgment," or "a deep-seated favoritism or antagonism" that made fair judgment impossible.  *Id.* at 551 and 555 (1994).[3]   The question is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused."  *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964).

The contention that the trial court ordered Petitioner to sit alone in the middle of the courtroom with his back to the trial judge is not supported by the record.  The record does indicate that Petitioner had his back to the witness stand when I-sha Bennett testified (Tr. Mar. 10, 2003, at 15), and he apparently was sitting sideways when Officer Derrick Knox was asked to identify him (*id.* at 90).  However, the trial court did not order Petitioner to sit that way, at least not on the record.

The trial court's admonishment to Petitioner about trying to defend himself was made at sentencing.  The trial court was cautioning Petitioner not to rely on "jailhouse lawyers" and, instead, to consult with the appellate attorney whom the trial court intended to appoint for him. (Tr. Mar. 27, 2003, at 5-10.)  The record does not support the contention that the trial court was biased or deprived Petitioner of a fair trial.

## IV.  Conclusion

---

[3]  Although *Liteky* "addresses the statutory recusal standards for federal judges, *see* 28 U.S.C. § 455, [the Sixth Circuit] has relied on the decision in assessing judicial-bias claims under the Due Process Clause . . . ."  *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)).

The conclusions reached by the Michigan Court of Appeals did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Nor did the state courts make unreasonable determinations of the facts. Accordingly, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

Reasonable jurists could debate the Court's assessment of Claim VI regarding discovery and the waiver of constitutional rights, Claim VIII, regarding trial counsel, and Claim IX regarding the trial court. Thus, a certificate of appealability may issue on those claims, *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000), and Petitioner may proceed *in forma pauperis* on appeal.

Reasonable jurists would not find debatable or wrong the Court's assessment of Claims I through V regarding the admission of "other acts" evidence, the sufficiency of the evidence, the sentence, the use of information from the preliminary examination, and the trial court's findings of fact. Nor would reasonable jurists find the Court's assessment of Claim VII debatable or wrong. The Court therefore declines to issue a certificate of appealability on Claims I - V and VII.

s/ DENISE PAGE HOOD_____
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2009_____

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 30, 2009, by electronic and/or ordinary mail.

S/William F. Lewis_____
Case Manager
